UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GENE SWANER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GEOFFREY W. BARBIERI, individually | ) | 1:10-cv-00928-RLY-DML |
| and in his official capacity as a Police | ) | |
| Officer of the Indianapolis Metropolitan | ) | |
| Police Department, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On July 21, 2010, Plaintiff, Gene Swaner, filed a Complaint against Defendant, Indianapolis Metropolitan Police Department Officer Geoffrey W. Barbieri, pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging, *inter alia*, violations of his Fourth and Fourteenth Amendment rights. Officer Barbieri now moves for summary judgment. The court, having read and reviewed the supporting and opposing briefs, the designated evidence, and the applicable law, now finds Officer Barbieri's Motion for Summary Judgment should be **GRANTED in part** and **DENIED in part**.

**I.     Motions to Strike**

In relation to the instant Motion for Summary Judgment, Plaintiff moves to strike portions of paragraphs 5, 6, 13, 14, 17, 18, and 22 contained in the Affidavit of Director of Security, Edwina Gearlds ("Gearlds Aff."), including Exhibit B attached thereto. Plaintiff also moves to strike portions of paragraphs 5-9 and 11 contained in the Affidavit

of Indianapolis Metropolitan Police Detective, William Carter ("Carter Aff."). Both affidavits contain an account of events leading up to the detention of Plaintiff at the Washington Square Mall ("Mall") in Indianapolis, Indiana, and the events leading to the seizure of Plaintiff's firearms. The bases for Plaintiff's motions are twofold: (1) the statements at issue were not made on personal knowledge and (2) the statements are hearsay.

Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that affidavits in support of a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated." After reviewing the affidavits of Gearlds and Detective Carter, the court finds that Plaintiff failed to identify any statement where the affiants lacked personal knowledge or where the statement contained inadmissible hearsay. Accordingly, Plaintiff's Motions to Strike (Docket ## 63, 64) are **DENIED**.

## II.     Factual Background

On December 16, 2009, Plaintiff entered the Mall to shop and walk for exercise. (Deposition of Plaintiff ("Plaintiff Dep.") at 29, 31, 38; Deposition of Officer Barbieri ("Barbieri Dep.") at 28-29). Plaintiff was wearing blue jeans, a Colts hat, and a dark windbreaker with a white stripe running across the chest, back, and down both sleeves. (Plaintiff Dep. at 20, 38; Barbieri Dep. at 36). Plaintiff was also carrying a firearm in a holster on the right side of his waist. (Plaintiff Dep. at 30). At one point during his walk, Plaintiff passed the fragrance store Senses, and waved to female employees, Barbara

Stauske and Sherrie Sauer.  (Plaintiff Dep. at 29; Barbieri Dep. at 31-32, 45; Barbieri Dep. Ex. 9).

### A. Stauske Reports Plaintiff

Once Plaintiff left the vicinity of Senses, Stauske called Gearlds and reported that "a white male that had previously harassed the employees of [Senses] was in the [M]all with a firearm and had opened his jacket to display his firearm while walking by the store." (Affidavit of Edwina Gearlds ("Gearlds Aff.") ¶ 5).  After speaking with Gearlds, Stauske proceeded to call 911 and told the operator that there was a:

> gentleman walking the mall that has given [Senses'] employees a hard time. I called and reported it a couple of weeks ago, and I just saw him in the mall here.  I wouldn't [sic] acknowledge him, so he wouldn't [sic] leave.  I have contacted the security officers here in the mall, [and] they are keeping an eye out . . . .  He comes by and harasses us.  He's been in here, he's had a firearm, he's been behind our counter.

(Defendant's Ex. L, Barb 911 Call 9/16/09).  Stauske also provided a description of the gentleman to the 911 operator, stating that he was wearing a "dark jacket with a white 'V' angled arrow on the back and sleeves," and "blue jeans." (*Id.*).  Officer Barbieri received the radio dispatch of Stauske's 911 call, and proceeded to the Mall in his patrol vehicle.  (Barbieri Dep. at 29).

### B. Mall Security Tracks Down Plaintiff

Gearlds went in search of Plaintiff and, based on Stauske's description, located Plaintiff as he entered the Sears department store.  (Gearlds Aff. ¶ 7).  Gearlds then contacted Sears Loss Prevention Officer Justin Lucas for assistance in confronting Plaintiff.  (*Id.* ¶ 8).  As Plaintiff was exiting the Mall through the Sears exit, Lucas and

Gearlds approached him. (Plaintiff Dep. at 29; Gearlds Aff. ¶ 9). Gearlds informed Plaintiff that they were detaining him because the employees at Senses had seen his firearm, and were afraid that he was going to hurt them. (Plaintiff Dep. at 29). Gearlds requested Plaintiff's driver's license for purposes of filling out a trespass form. (*Id.*).

When Officer Barbieri arrived at the Mall, he went to Senses to speak with Stauske. (Barbieri Dep. at 30). Stauske informed Officer Barbieri that the man she called about had been stalking and harassing her and other female employees at Senses, and that the man had brandished a firearm in the past. (*Id.* at 31). In the midst of that conversation, Officer Barbieri received a radio call that a suspect had been located outside of Sears. (*Id.* at 32).

### C. Officer Barbieri Detains Plaintiff

Officer Barbieri arrived to the area where Gearlds and Lucas were detaining Plaintiff. (Gearlds Aff. ¶ 12). When Officer Barbieri first observed Plaintiff, he noticed that Plaintiff matched the description of the male suspect given by the dispatcher and Stauske. (Barbieri Dep. at 33). As Officer Barbieri approached the three individuals, Plaintiff walked away from Gearlds and Lucas and headed toward Officer Barbieri. (*Id.* at 34). Officer Barbieri asked Plaintiff if he had any weapons on him. (*Id*; Gearlds Aff. ¶ 13; Plaintiff Dep. at 30). The parties dispute Plaintiff's answer to that question; Plaintiff testified that he said "yes," and Officer Barbieri, Gearlds, and Lucas testified that Plaintiff said "no." (Plaintiff Dep. at 30; Barbieri Dep. at 34; Gearlds Aff. ¶ 13; Deposition of Justin Lucas ("Lucas Dep.") at 17). At any rate, Officer Barbieri also noticed a 'bulge" that was the size and shape of a gun, on the right side of Plaintiff's

4

body. (Barbieri Dep. at 34). Officer Barbieri proceeded to raise Plaintiff's jacket, took the firearm, and emptied it of ammunition. (Plaintiff Dep. at 30; Barbieri Dep. at 36). Plaintiff then provided his gun permit and driver's license to Officer Barbieri. (*Id.* at 37; Plaintiff Dep. at 30-31). Officer Barbieri testified that he took Plaintiff's firearm into custody because Plaintiff demonstrated "very erratic behavior" and he was concerned about public safety. (Barbieri Dep. at 61).

After taking Plaintiff's firearm, Officer Barbieri read Plaintiff his *Miranda* rights, ordered that Plaintiff put his hands behind his back, handcuffed Plaintiff, and ordered him to sit on the ground. (Barbieri Dep. at 38; Plaintiff Dep. at 30). Officer Barbieri specifically testified that, in his opinion, once he retrieved Plaintiff's firearm, Plaintiff was not free to leave. (*Id*. at 38).

While outside with Plaintiff, Gearlds informed Officer Barbieri that she had dealt with several reports of Plaintiff harassing and stalking female employees at the Mall. (Gearlds Aff. ¶ 17). She also told Officer Barbieri that she had to personally escort Stauske and Sauer to their vehicles because they feared for their safety around Plaintiff. (*Id*. ¶ 18). After sitting outside Sears for twenty to thirty minutes, Plaintiff was helped to his feet and escorted inside to the Sears Loss Prevention Office by Officer Barbieri, Gearlds, and Lucas. (*Id*. at 42; Gearlds Aff. ¶ 19).

Plaintiff remained handcuffed in the Loss Prevention Office while Gearlds completed the Notice of Trespass. (*Id.* at 42-43; Plaintiff Dep. at 30; Gearlds Aff. ¶ 21, Ex. A). Officer Barbieri went back to the Senses Store only to discover that Stauske had left the store because her shift had ended. (Barbieri Dep. at 45).

5

### D. Actions Taken After Plaintiff was Released

Once Gearlds completed the Notice of Trespass, Officer Barbieri returned Plaintiff's firearm permit, stood Plaintiff up, and removed the handcuffs. (Plaintiff Dep. at 30-31). As Plaintiff exited the store, Officer Barbieri, Detective Carter, and Gearlds accompanied Plaintiff to his vehicle. (*Id.* at 31; Gearlds Aff. at 22). While en route to Plaintiff's vehicle, Officer Barbieri asked Plaintiff if he had any more weapons. Plaintiff informed him that there was a firearm in the center console of his vehicle. (Plaintiff Dep. at 31, 49; Gearlds Aff. ¶ 22). Officer Barbieri entered Plaintiff's unlocked vehicle, retrieved the firearm from the center console, and told Plaintiff he was free to leave. (Plaintiff Dep. at 31, 50; Gearlds Aff. ¶¶ 23, 24). The encounter between Plaintiff and Officer Barbieri lasted approximately forty-five minutes. (Gearlds Aff. ¶ 25).

## III. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all

reasonable inferences in favor of the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

The burden is upon the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the non-moving party may not rest upon the pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

**IV.    Discussion**

    **A.    Waived Claims**

As an initial matter, in addition to Plaintiff's Section 1983 claims under the Fourth Amendment (Count II) and the Fourteenth Amendment (Count IV), Plaintiff's Complaint also alleges violations involving the First Amendment (Count I), the Second Amendment (Count VI), and state law tort claims of false arrest (Count VIII), false imprisonment (Count IX), and battery (Count X).[1] In his Response, Plaintiff expressly waives his claim under the First Amendment and "any potential *Monell* claim." (*See* Plaintiff's Response at 15, 24). Plaintiff also failed to address his Second Amendment or state law tort claims in his briefing. Thus, Plaintiff abandoned those claims, and summary judgment in Officer Barbieri's favor is proper as to those claims. *See*, *e.g.*, *Laborers' Int'l Union of*

---

[1] Plaintiff's claims arising under the Fifth Amendment (Count IV) and the Indiana Constitution (Counts III, V, VII) were dismissed with prejudice by the court's order on December 21, 2011. (*See* Docket # 47).

*N. Am. v. Vehicleuso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Accordingly, Plaintiff's only remaining claims are his Section 1983 claims alleging violations of the Fourth (Count II) and Fourteenth (Count IV) Amendments.

### B. Qualified Immunity

Officer Barbieri argues that he is entitled to qualified immunity from Plaintiff's remaining Section 1983 claims. "Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (additional citation omitted)). In order to establish whether Officer Barbieri is entitled to qualified immunity, the court engages in a two-step inquiry to determine: "(1) whether [Officer Barbieri] violated a constitutional or statutory right [;] and (2) whether the right was clearly established at the time of the alleged misconduct." *Gonzales v. Vill. of W. Milwaukee*, 671 F.3d 649, 657 (7th Cir. 2012) (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). "A negative answer to either question entitles the official to the defense." *Id.* (citation omitted).

Plaintiff alleges Officer Barbieri unconstitutionally searched and seized him in violation of his Fourth Amendment rights, and that he took his property – i.e., his firearms – without due process of law, in violation of his Fourteenth Amendment rights. The court will begin with Plaintiff's Fourth Amendment claims.

### 1. Fourth Amendment

#### a. *Terry* Stop

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend IV. Consistent with the Fourth Amendment, a police officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "[T]he reasonable suspicion standard is an objective one," *United States v. Patton*, 705 F.3d 734, 738 (7th Cir. 2013) (citing *Terry* 392 U.S. at 27), and requires more than a hunch but less than probable cause. *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010). In determining whether an officer had reasonable suspicion, the court assesses the totality of the circumstances and makes "common-sensical judgments and inferences about human behavior." *Id*. (quotation marks and citations omitted). For an interaction to remain a valid *Terry* stop, it must be conducted using the least restrictive means reasonable under the circumstances. *Id*. (citations omitted).

Here, the information known to Officer Barbieri at the time he stopped and detained Plaintiff began with the 911 call, alerting him that an armed man was harassing female employees at Senses. Officer Barbieri spoke with Stauske, who gave him a physical and clothing description of Plaintiff, and informed him that Plaintiff had allegedly stalked and harassed her and other female Senses' employees, and brandished a firearm, in the past.

9

Once Officer Barbieri arrived outside the Mall, he noticed Plaintiff matched the description provided by Stauske. Officer Barbieri asked Plaintiff if he had a firearm. The parties dispute Plaintiff's response, but it remains undisputed that Officer Barbieri did find a gun on Plaintiff's person, further corroborating Stauske's story. At that point, Officer Barbieri took Plaintiff's firearm. Officer Barbieri's stop was justified because, as the Seventh Circuit has noted, "[a]rmed people are so dangerous to the peace of the community that the police should not be forbidden to follow up a tip that a person is armed, and as a realistic matter this will require a stop in all cases." *U.S. v. DeBerry*, 76 F.3d 884, 886 (7th Cir. 1996). Thus, Officer Barbieri's initial stop of Plaintiff did not violate the Fourth Amendment.

During the twenty to thirty minutes Plaintiff was detained outside of Sears, Gearlds informed Officer Barbieri that she had received "numerous reports in the past of [Plaintiff] harassing and stalking female employees of several stores in the [M]all," and that she had to "personally escort [Stauske and Sauer] out to their vehicles due to [him] making them fear for their safety." (Gearlds Aff. ¶¶ 17-18). Detective Carter, an off-duty IMPD officer who works security at the Mall, informed Officer Barbieri that he too had to escort employees from the Senses store to their vehicles following their shifts due to the same concerns. (Carter Aff. ¶ 7).

During the twenty or so minutes Plaintiff was detained in the Sears Loss Detention Office, Plaintiff signed the Notice of Trespass form that Gearlds provided to him. Officer Barbieri then went back to the Senses store and found out that Stauske had left the

10

premises because her shift had ended. Officer Barbieri ultimately determined that he did not have probable cause to arrest Plaintiff, and he let him go.

Although Plaintiff was handcuffed throughout his entire encounter with Officer Barbieri, the use of handcuffs does not necessarily transform a *Terry* stop into a full-blown arrest. *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004) (holding the use of handcuffs and temporarily detaining suspect in squad vehicle who matched the description of a recent armed robber was a permissible *Terry* stop); *United States v. Glenna*, 878 F.2d 967, 973 (7th Cir. 1989) (holding that use of handcuffs to effectuate *Terry* stop was permissible, where police learned subject may be, *inter alia* carrying several small firearms). Due to the safety concerns involved, Plaintiff's detention was of a limited scope and was executed through the least restrictive means to ensure officer and the public's safety. Accordingly, the court concludes that Officer Barbieri's stop and seizure of Plaintiff's firearm were consistent with the Fourth Amendment. *U.S. v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999) (citing *United States v. Novak*, 870 F.2d 1345, 1352 (7th Cir. 1989)).

### b. Vehicle Search

The court now turns to Officer Barbieri's subsequent search of Plaintiff's vehicle and seizure of Plaintiff's firearm out of the center console of his vehicle. At this point, Plaintiff was not under arrest, was not subject to a *Terry* stop, and was free to leave. Officer Barbieri contends he had the right to seize Plaintiff's firearm because Plaintiff gave him his consent to search his vehicle, and the seizure was necessary to protect the public safety.

Consent is an exception to the warrant requirement, and as such, Officer Barbieri must prove that Plaintiff freely and voluntarily consented to the search. *United States v. Villegas*, 388 F.3d 317, 325 (7th Cir. 2004). Consent can be express or implied. *United States v. Renken*, 474 F.3d 984, 987 (7th Cir. 2007) ("[Consent in certain cases can be implied in the absence of clear verbal permission."). Whether consent was voluntary is an issue of fact. *Hadley v. Williams*, 368 F.3d 747, 750 (7th Cir. 2004).

Plaintiff testified that Officer Barbieri, Detective Carter, and Gearlds escorted him out to his vehicle. Officer Barbieri asked him if he had any other weapons in his vehicle, and Plaintiff responded "yes" and that it was in the center console of his vehicle. (Plaintiff Dep. at 31). Plaintiff testified that he did not "let Officer Barbieri get in [his] car and take [the firearm]," but the vehicle was unlocked. (*Id.* at 49-50). Officer Barbieri opened Plaintiff's vehicle door and took the firearm. (*Id.*; Plaintiff Dep. at 50).

Viewing this evidence in the light most favorable to Plaintiff, the court finds an issue of fact as to whether Plaintiff gave Barbieri consent to search his vehicle. "The fact that a person answers a knock at the door doesn't mean that he agrees to let the person who knocked enter." *Williams*, 368 F.3d at 750 (finding issue of fact as to whether occupant of house gave consent to police entry when he told his sister to "[a]nswer the door" and "tell them I ain't here"). Similarly, just because Plaintiff's vehicle door was unlocked and, in answer to Officer Barbieri's inquiry, Plaintiff informed him he had a firearm in the center console of his vehicle, does not necessarily mean that Plaintiff consented to Officer Barbieri's entry into his vehicle and seizure of his firearm. That issue is best resolved by the trier of fact. *Id.*

That consent must be freely and voluntarily given in order to be considered as a valid exception to the warrant requirement is clearly established. *Villegas*, 388 F.3d at 325. Accordingly, Officer Barbieri is not entitled to the defense of qualified immunity with respect to the search of Plaintiff's vehicle and seizure of his firearm.

Accordingly, Officer Barbieri's Motion for Summary Judgment on Count II is **GRANTED** with respect to the initial stop of Plaintiff and seizure of the firearm found on his person, and **DENIED** with respect to the search of Plaintiff's vehicle and seizure of the firearm found in his car console.

### 2. Fourteenth Amendment

The court next considers whether Officer Barbieri is entitled to qualified immunity for Plaintiff's Due Process claim under the Fourteenth Amendment premised upon Officer Barbieri's retention of his firearms. Plaintiff raised this claim for the first time in his Surreply. (*See* Plaintiff's Surreply at 3). Because Officer Barbieri had no chance to rebut this new, undeveloped argument, the court will not consider it. *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived, . . . as may argument made for the first time in reply briefs."). Moreover, a claim for unreasonable search and seizure must be analyzed under the Fourth Amendment's reasonableness standard, not the Fourteenth Amendment's substantive due process standard. *See Graham v. M.S. Connor*, 490 U.S. 386, 388 (1989). Accordingly, Officer Barbieri's Motion for Summary Judgment is **GRANTED** with respect to Count (IV).

## V.     Conclusion

Based on the aforementioned reasons, Plaintiff's Motions to Strike (Docket ## 63, 64) are **DENIED**, and Officer Barbieri's Motion for Summary Judgment (Docket # 58) is **DENIED** with respect to the search of Plaintiff's vehicle and seizure of his firearm, and **GRANTED** in all other respects.

**SO ORDERED** this 28th day of March 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.